## CONTINUATION IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Mallorie L. Campbell, being first duly sworn, hereby depose and state as follows:

## EXECUTIVE SUMMARY

1.     This morning, I was executing a search warrant looking for evidence of gun crime and wire fraud. The warrant permitted me to search computers at a suspect's home. While searching a computer, I found suspected child pornography. I am asking for permission to expand the scope of things to be seized from the suspect's residence to include evidence of violations of 18 U.S.C. § 2252A, which prohibits the receipt (2252A(a)(2)) and possession (2252A(a)(5)) of child pornography.

## PROBABLE CAUSE

2.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and have been a special agent since December of 2021. I am a federal law enforcement officer authorized to investigate violations of federal criminal law, to include violations of Title 18 of the United States Criminal Code. Prior to becoming an agent of the ATF I was a sheriff's deputy in Louisville, Kentucky for a period of approximately eight years. For approximately four of those years, I was assigned to a joint task force with the Federal Bureau of Investigation focusing on white collar crime. I have participated in the execution of dozens of search warrants and in the investigation of various crimes including federal firearms offenses, white collar offenses, human trafficking crimes, and controlled substance offenses.

3. On today's date (11/21/2025) I was assisting with the execution of a search warrant at 5850 Downing St. Portage, Michigan (Target Location 3), a residence associated with Brandon Jeffrey WILDER. The warrant was authorized by the Hon. SALLY J. BERENS in Case. No. 1:25-mj-635 and permitted the search of "electronic devices including but not limited to cell phones, computers, hard drives, and flash drives that could contain photographs, contacts, and contents therein," for the purpose of seizing (among other things) "Pictures and/or videos that contain evidence of violations 18 U.S.C. § 922(u) (stealing and unlawful carrying away of firearms from the person or premises of a firearms licensee) and of 18 U.S.C. § 1343 (wire fraud), and/or pictures and/or videos that establish user attribution."

4. Investigators located electronic devices on scene, to include a black desktop computer tower that appeared to be custom built. After being advised of and then waiving his *Miranda* rights, Brandon Jeffrey WILDER provided the computer's password to me. I then used the password to access the computer and began searching it for pictures and videos of the authorized type. In a "screenshots" subfolder within a "Pictures" folder I located numerous pictures of firearms. I also found:

    a. approximately 40 photos featuring girls that appear to be approximately 12 years of age in bathing suits;

    b. At least 4 photos depicting a female who appears to be between 10 and 17 years of age. Two of these photos displayed the minor female performing fellatio on the erect penis of an adult male. One photo appeared to show the same naked

female along with the erect penis of an adult male. The fourth image displayed the front of the female's body fully nude.

5. Investigators also found multiple hard drives hidden underneath WILDER's bed between the mattress and the box spring. These have not yet been searched.

## CHARACTERISTICS COMMON TO INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN

6. Based on the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the distribution, receipt, and collection of child pornography. Characteristics common to people involved in child pornography include that they:

  a. Generally have a sexual interest in children and receive sexual gratification from viewing children engaged in sexual activity or in sexually suggestive poses, or from literature describing such activity;

  b. May collect sexually explicit or suggestive materials in a variety of media, including in hard copy and/or digital formats. Child pornography viewers and collectors often use these materials for their own sexual arousal and gratification. They may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse or groom a child to participate in sexual activities, or to demonstrate the desired sexual acts. They may also use toys, games, costumes, sexual clothing, sexual paraphernalia, and children's clothing to lure or entice children. They may keep "trophies" or mementos of

    sexual encounters with children, or items that they use to gratify a sexual interest in children, such as by collecting children's underwear or other items belonging to a child;

c. May take photographs that either constitute child pornography or indicate a sexual interest in children by using cameras, video cameras, web cameras, and cellular telephones. Such images and video may be taken with or without the child's knowledge. This type of material may be used by the person to gratify a sexual interest in children;

d. Generally maintain their collections in a safe, secure, and private environment, most often where they live and/or on their person. These images and videos can be downloaded onto desktop or laptop computers, computer disks, disk drives, data disks, system disk operating systems, magnetic media floppy disks, internet-capable devices, cellular telephones, tablets, digital music players, and a variety of electronic data storage devices (hardware, software, diskettes, tapes, CDs, DVDs, SD cards, memory cards, USB/jump/flash memory drives, external hard drives, and other digital storage media). The images can be stored in both digital and hard copy formats and are usually hidden so that they are not found by other members of the residence or by anyone else who enters the home. Such hiding places could include, but are not limited to, garages, sheds, attics, vehicles, bags, and pockets. Digital files and devices may be password-protected, encrypted, or otherwise protected;

  e. May correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, screen names, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. Such correspondence may take place, for example, through online bulletin boards and forums, internet-based chat messaging, e-mail, text message, video streaming, letters, telephone, and in person;

  f. Utilize internet-based communications platforms to solicit, save, and trade child pornography.

## DEFINITIONS

  7. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

8. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or public area of any person.

## SPECIFICS FOR SEARCHING AND SEIZING COMPUTER SYSTEMS

9. Computers and internet-capable devices such as tablets and cellular telephones facilitate the collection and distribution of child pornography. The internet affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

10. Storage capacity of computers and portable storage media, such as USB or thumb drives, has grown tremendously in recent years. These drives can store thousands of images at very high resolution, are easily transportable, and are relatively inexpensive. Advances in technology have significantly reduced the size of digital storage devices such that now large numbers of digital files can be stored on media that will fit in a person's pocket, on a keychain, or in any number of easily transportable and concealable places, including in vehicles. An individual can now easily carry, on his or her person, storage media that contains thousands of files, including images, video files, and full-length movie files.

11. As with most digital technology, communications made from a computer device are often saved or stored on that device. Storing this information can be

intentional, for example, by saving an e-mail as a file on the computer or saving the location as a "Favorite" website in a "bookmarked" file. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be stored automatically in many places, such as temporary files or ISP client software, among other places. In addition to electronic communications, a computer user's internet activities generally leave traces in a computer's web cache and internet history files.

12. A forensic examiner often can recover evidence that shows whether a computer device contains file-sharing software or applications, when the device was sharing files, and some of the files that were uploaded or downloaded. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a computer, the data contained in the file often does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space—for long periods of time before they are overwritten.

13. Similarly, files that have been viewed via the internet are automatically downloaded into a temporary internet directory, or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only

overwritten as they are replaced with more recently viewed internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

  14. Searches and seizures of evidence from computers and computer devices commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer-related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because:

    a. Computer storage devices can store the equivalent of millions of pages of information. When a user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all of the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

    b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is

an exacting scientific procedure that is designed to protect the integrity of the evidence and recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

15. In order to retrieve data fully from a computer system, the analyst needs all storage devices as well as the central processing unit ("CPU"). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software that may have been used to create the data (whether stored on hard drives or on external media).

16. To examine the computer and digital media properly, it may also be necessary to seize certain other items including documentation of programs, passwords, notes, or even specialized hardware. Therefore, this warrant seeks permission to seize not only the digital storage media and to search it for evidence in the form of child pornography images or videos, stored messages associated with the receipt and distribution of such images, and any chat or other text files relating to contact with collectors of child pornography or with actual children, but also requests permission to seize all hardware, software, and computer security devices necessary to access and examine the computer storage media. Peripheral equipment including printers, routers, modems, and network equipment used to connect to the internet may also contain

evidence of what devices were used to connect to the internet, who used those devices, and what actions the person(s) performed while using such devices.

17. Forensic examiners can also find the presence or absence of certain software and programs to determine who controlled a computer at a given time. Such evidence includes viruses, Trojan horses, spyware, malware, and other forms of malicious software; the presence or absence of security software designed to detect malicious software; the lack of malicious software; and the presence or absence of software designed to protect a device from infiltration, access, or control by another person or entity, which may include pop-up blockers, security software, password protection, and encryption. Forensic examiners can also find evidence of software or programs designed to hide or destroy evidence.

18. The time period required for a complete, safe, and secure forensic examination of the computer and storage media is uncertain. The government will make available for pick-up within a reasonable time all items found not to contain any contraband or material to be seized pursuant to the warrant and all hardware and software no longer needed for examination purposes. In conducting the search, the forensic examiner and agents will examine files regardless of their name because such names and file extensions can be altered to conceal their actual content. Because of the volume of data to be searched and the need to complete the examination in a reasonable time, the forensic examiner will also use computer techniques such as keyword searches that may result in the display of irrelevant materials.

## MANNER OF EXECUTION

19. Searching the electronic devices seized will not require persistent intrusion onto a private residence after the devices have been taken into the custody of law enforcement. Rather, searching these devices will consist of forensically extracting the devices using computer equipment, then reviewing the extracted data using computer software. As explained above, forensic extraction can take more than 24 continuous hours to complete. In the event that forensic examiners are able to unlock the devices, searching may also include manual review of the devices by an investigator or investigators. Given the nature of these search techniques, I submit there is good cause for authorizing the search to occur at any time, day or night.

## CONCLUSION

20. Based on my training, experience, and the facts contained in this document, there is probable cause to believe that search of the Target Location 3 and the electronic devices therein, further described in Attachment A, will lead to the discovery of evidence, fruits, and instrumentalities to establish violations of the 18 U.S.C. § 2252A, as described in greater detail in Attachment B.